## BAMBRICK, Appellant, v. BAMBRICK, Administratrix.

### Division Two, June 26, 1900.

1. **Limitations:** ACCOUNT: VARIOUS ITEMS. If all items of an account except the last were made more than five years before suit was brought, and there is no proof to sustain that item, the whole account is barred by limitations.

2. ——: ADMINISTRATION: PRESENTATION OF CLAIM: WAIVER. A verbal statement by an administrator that he would pay claimant every dollar coming to him if he would not put in a claim against the estate, made by him before he had been appointed administrator, is not a waiver of service, and unless the claim is presented within two years after the issuance of letters, it is barred. Such promise could only bind the estate when made in writing and signed by the administrator after letters of administration had been issued to him.

3. ——: ——: ——: PROMISE TO PAY. Nor is such admission and promise, no itemized account being exhibited to the administrator, such a compliance with the law as amounts to a presentation of the claim.

4. ——: ——: BARRED DEBTS: REVIVAL. The administrator has no power to revive valid debts against the estate which have been barred by the general statute of limitations.

5. Statute of Frauds: PROMISE TO PAY INTESTATE'S DEBTS. An administratrix who promises to pay a debt of her husband can not be held individually liable unless such promise is in writing.

Appeal from St. Louis City Circuit Court.—*Hon. Leroy B. Valliant,* Judge.

AFFIRMED.

*Adiel Sherwood* for appellant.

(1) Where there is a conflict in the evidence, or the evidence is all one way, as here, or where reasonable minds may differ with respect to the matter, plaintiff is entitled to have his case submitted to the jury unless as a matter of law the court would be compelled to set aside a verdict if found. Farley v. Pettes, 5 Mo. App. 262; Dennis v. Crookes, 23 Mo. App. 532; 7 Am. and Eng. Ency. of Law (2 Ed.), 114; Thurston v. Thornton, 1 Cush. (Mass.) 89; Winchester v. Howard, 97 Mass. 304; Grant v. Ry. Co., 25 Mo. App. 227; Kansas City Co. v. Smith, 36 Mo. App. 608; Perkins v. Hinsdale, 97 Mass. 159. Moreover, in this case the evidence was all one way that plaintiff, relying upon defendant's promise, did not present his claim to the probate court, fully expecting payment from defendant;—in short, there was a con-

Bambrick v. Bambrick.

tract entered into by and between plaintiff and defendant, whereby plaintiff relinquished his right to present his claim and enforce the same in consideration of defendant's promise to pay the claim. Pollock Prin. of Contracts, 160; Given v. Corse, 20 Mo. App. 132; 1 Parsons Cont. (7 Ed.), 472; Rue v. Meirs, 10 Cent. Rep. 682; s. c., 43 N. J. Eq. 377; Bowen v. Tipton, 1 Cent. Rep. 494; s. c., 64 Md. 275; 6 Am. and Eng. Ency. of Law (2 Ed.), 740; Stebbins v. Smith, 4 Pick. (Mass.) 97; Templeton v. Bascom, 33 Vt. 132; Porter v. Bille, 1 Freem. 125; Barber v. Fon, 1 Vent. 159; Webbe v. Romona Co., 58 Ill. App. 222. (2) Defendant's promise to plaintiff was an original promise to plaintiff from defendant founded upon sufficient consideration and it is not necessary that it should be evidenced by writing. It was not a promise by one person to pay the debt of another person. The consideration upon which defendant's promise rests was plaintiff's promise, carried out to the letter, not to present and enforce his claim in the probate court. The statute of frauds does not apply. 1 Parsons' Cont. (7 Ed.), 146; 3 Id. 21; Webbe v. Romona Co., 58 Ill. App. 222; Trudeau v. Pontee, 165 Mass. 81; Rowell v. Dunwoody, 37 Atl. Rep. 227; Snow v. Stevens, 45 S. W. Rep. 270. (3) It is a matter of no moment in such a case, whether plaintiff's claim could have been legally enforced or not. The inquiry is: Did plaintiff reasonably believe he had a claim? "The smallest spark" of consideration is sufficient to support a contract deliberately made. Husband v. Epling, 81 Ills. 172; Long v. Town, 42 Mo. 545; McKinley v. Watkins, 13 Ills. 140. (4) The entire performance of a parol contract by one party takes the promise of the other out of the operation of the statute of frauds. Self v. Cordell, 45 Mo. 345; Hoyle v. Bush, 14 Mo. App. 408; Sugget's Admr. v. Cason's Admr., 26 Mo. 223; Summons v. Headlee, 94 Mo. 482.

*Thos. J. Rowe* and *Lubke & Muench* for respondent.

(1)   The items of appellant's pretended demand dated in 1882, 1884 and 1886 were not provable against Patrick Bambrick's estate, because none of them had accrued within five years before his death.   The general limitation statute of the State had barred them.   R. S. 1889, sec. 6775; R. S. 1899, sec. 4273.   And his failure to exhibit any of his pretended claims for allowance against the estate within two years required by the administration statute, barred all of them.   R. S. 1889, sec. 184; R. S. 1899, sec. 185.   A claim is not "legally exhibited" against the estate of a decedent so as to authorize its allowance and classification until it has been shown to the administrator with a view to procuring its allowance.   Pfeiffer v. Suss, 73 Mo. 245; Burckhartt v. Helfrich, 77 Mo. 377.   An administrator is not permitted by any acts or verbal declarations to waive the service upon him of the written notice required by law to place a claim in the fifth class.   This provision of the statute was enacted from motives of public policy, and an administrator has no right to waive its terms.   Spalding v. Suss, 4 Mo. App. 541; Dorsey v. Burns, 5 Mo. 334; Bryan v. Mundy, 14 Mo. 458; Miller v. Jennings, 15 Mo. 265; Nelson v. Russell, 15 Mo. 356; Smarr v. McMartin, 35 Mo. 349; Richardson v. Harrison, 36 Mo. 96.   An administrator has no authority to take a debt of his intestate out of the general statute of limitations by a new promise.   It is his duty "to protect the interests of creditors and distributees who stand upon their strict legal rights."   Neither can he discharge out of the estate any assumed obligation which the law would not enforce, nor can he revive one which by operation of law is not enforcible. Cape Girardeau Co. v. Harbison, 58 Mo. 90; Bauer v. Gray, 18 Mo. App. 173.   (2)   The evidence adduced by appellant was insufficient to establish a legal promise on the part of the

respondent. (a) The promise alleged against her in the petition was that she would pay appellant "out of the assets of said estate coming to her hands." There was nothing in the appellant's testimony to this effect. And if she had made such a promise it would have been nugatory, because as administratrix she had no power to waive the statutory requirements for the exhibition of his demands to the probate court and the establishment of the same there by legal evidence. She could not waive the affidavit which the law requires all claimants as creditors of a decedent to make before their demands can be allowed by the probate court. (R. S. 1889, sec. 194; R. S. 1899, sec. 195.) Pfeiffer v. Suss, 73 Mo. 245; Burckhartt v. Helfrich, 77 Mo. 377; Bauer v. Gray, 18 Mo. App. 164; Cape Girardeau Co. v. Harbison, 58 Mo. 90. The acknowledgment to remove the bar of the statute of limitations must be in writing and signed by the party making it and must be a direct and unqualified admission of a subsisting debt which the signer is liable for and is willing to pay. Carr v. Hurlbut, 41 Mo. 264; Chambers v. Ruby, 47 Mo. 99; Martin v. Branham, 86 Mo. 643; Wells v. Hargrave, 117 Mo. 563. (b) If treated as the personal promise of the defendant the evidence was not sufficient because no writing signed by defendant or signed by some one for her by her authority was shown. R. S. 1889, sec. 5186; R. S. 1899, sec. 3418. The promise alleged in the petition was after respondent qualified as administratrix and "within the period of two years from the date of said letters of administration." The pretended promise testified to was made before her appointment. In either case her supposed undertaking was a collateral one and would only have validity when reduced to writing. Appellant upon his part made no agreement and did not release the estate from liability; on the contrary, by presenting his demands in the probate court, he tried to hold the estate. Bissig v. Britton,

59 Mo. 204; Barker v. Scudder, 56 Mo. 272; Glenn v. Lehman, 54 Mo. 45; Haeberle v. O'Day, 61 Mo. App. 390; Rottmann v. Pohlman, 28 Mo. App. 399.

GANTT, P. J.—The petition in this case contained two counts but as plaintiff voluntarily dismissed his action on the first count, it will not be necessary to encumber this record with that count.

The second count is in the words following:

"For a second cause of action plaintiff states that on or about the 24th day of July, 1891, Patrick Bambrick, a resident of the city of St. Louis, died in said city leaving the defendant Rose A. Bambrick, his widow; that at the time of his death said Patrick Bambrick was justly indebted to this plaintiff for money loaned to him and for money paid at his request for and on his account, and for personal property sold and delivered to him, together with interest thereon, all of which will more fully appear from the account hereto annexed and marked "Exhibit A.," in a large sum to-wit: the sum of eleven thousand, four hundred and forty-seven dollars and five cents; that said Patrick Bambrick left a large estate of great value, to-wit, of the value of more than two hundred thousand dollars; that more than one hundred thousaid dollars thereof was in personalty; that besides his widow, said defendant, the said Patrick Bambrick left three minor children; that said widow and said children were the sole heirs and distributees of said estate; that afterwards, to-wit, on the 4th day of August, 1891, letters of administration upon said estate were granted by the probate court of the city of St. Louis to the defendant, said Rose A. Bambrick, and she thereupon duly qualified as administratrix and entered upon the active administration of said estate.

"Plaintiff further states that afterwards, to-wit, within the period of two years from the date of said letters of

administration, plaintiff notified the said defendant of his said claim against Patrick Bambrick, deceased, and presented the same to her; that the defendant admitted that said claim was a just claim, and that said amount was justly due to this plaintiff, and further, that plaintiff, at the urgent instance and request of the defendant, and because she was largely interested in the personalty of said estate as a distributee, surrendered and relinquished his said claim against said estate, and released said estate from all liability therefor, whereupon and in consideration of such release and of plaintiff's said undertaking and agreement and of the advantage accruing to her, the said defendant, as the widow of Patrick Bambrick and as a distributee of said estate, undertook, promised and agreed to pay the plaintiff out of the assets of said estate, coming to her hands, the amount of his said demand, to-wit, the sum of eleven thousand, four hundred and forty-seven dollars and five cents.

"Plaintiff further states that he well and truly kept the terms of his said undertaking and agreement with said defendant, that he did release said estate from liability for his said claim, and that he refrained from proving the same for allowance in the probate court until after the lapse of two years from the date of letters of administration when same became barred by limitation.

"Plaintiff further states that defendant has not well and truly kept her promise to pay his said demand, but that although repeatedly urged and requested to pay the same she has refused, failed and neglected to pay the amount thereof, or any portion thereof, to plaintiff's damage in the sum of eleven thousand, four hundred and forty-seven dollars and five cents.

"Wherefore, plaintiff asks judgment against said defendant for the sum of eleven thousand, four hundred and forty-seven dollars and five cents for interest and costs."

Defendant by her answer denied all the allegations of plaintiff as to his having a claim against Patrick Bambrick or his estate and denied that she ever made to plaintiff the promise alleged, *in writing* or otherwise; and averred that his pretended claim was barred by limitation more than five years before Patrick Bambrick's death. She denied all the other allegations of the petition save and except the averments of the death of Patrick Bambrick, the amount and character of his estate and that he left surviving him defendant as his widow and three minor children, and that she was the duly qualified administratrix.

The reply was a denial of the allegations of the answer and an allegation that Patrick Bambrick acknowledged plaintiff's claim and made partial payments thereon for years next preceding his death.

The account sued on is as follows:
Patrick Bambrick, deceased:

To John Bambrick, Dr.

1882.
Feb'y 17 —Loan of $4,000, interest for 10 1-3
          years at 6 per cent, $2,480.∴.....$ 6,480 00
1884.
Feb'y 15—Loan of $2,700, interest for 10 1-3
          years at 6 per cent, $1,512...... 4,212 00
1886
Feb'y 15—1 team of mules, harness, etc., $390,
          7 years interest, at 6 per cent,
          $163.80 .......... ......... 553 80
1891.
Jan'y 16—Loan $175, interest for 2 1-2 years
          at 6 per cent, $26.25......... 201 25

                              $11,447 05

The suit was commenced March 14, 1895. The cause was tried at the October term, 1897, before the court and a jury.

At the close of the evidence on part of plaintiff the court gave the following instruction:

"Upon the pleadings and the evidence adduced by plaintiff he is not entitled to recover."

Thereupon plaintiff took a nonsuit with leave to move to set the same aside.

Afterwards within four days he moved the court to set aside the nonsuit on the one ground that the court erred in giving the instruction that plaintiff could not recover. This motion the court overruled and plaintiff excepted and in due time appealed to this court.

The evidence tended to prove that plaintiff, John Bambrick, and Patrick Bambrick were brothers, and were engaged for a number of years, in business as contractors in St. Louis. That Patrick had brought John to this country and given him his start in business.

Patrick died July 24, 1891, leaving an estate valued at more than two hundred thousand dollars.

His widow, the defendant, administered his estate and made her final settlement in the probate court of the city of St. Louis. John Bambrick presented the account which is the foundation of this suit in the probate court, but it was disallowed, presumably because not presented within the two years after grant of letters. He then brought this suit against the widow of his deceased brother.

No evidence whatever was offered to prove that Patrick Bambrick ever owed plaintiff the $175 item in the account of date January 16, 1891. As to the charge for $390 and interest, of date February 15, 1886, for a team of mules and harness, the testimony was that Patrick gave a pair of mules to another brother James about the year 1882 or 1883 to start him in business; that after James got the team John claimed them, and Patrick said, "all right, he can take the mules and he would get him another team." James kept the team and how Patrick and plaintiff settled the matter if

they ever did James did not know. That occurrence took place eight or nine years prior to Patrick's death.

As to the two other items of the plaintiff's account the evidence consisted of two cancelled checks drawn by plaintiff on the Franklin Bank of St. Louis.

The first one of these checks was for $4,000, dated February 11, 1882, payable to cash; and the other was for $2,700, dated February 15, 1884, payable to H. Grabenschroeder. The first check was indorsed by the deceased, Patrick Bambrick. When, where and for what purpose he made this indorsement was not shown. One of plaintiff's witnesses testified that about the time when this check was drawn Patrick Bambrick and one Moryhan dissolved their partnership and that the former bought the effects of the concern and paid Moryhan $6,000 in cash and gave his notes for the balance of this purchase money. Witness did not see this check in connection with this transaction, but saw it a year or two later among John Bambrick's papers when he was in the latter's employ. Witness also stated that when speaking of his settlement with Moryhan the deceased, Patrick Bambrick, stated in the presence of witness that he had borrowed $4,000 from his brother John "to wind up this affair," that is, to make the settlement with Moryhan. The same witness testified that when the second check was drawn Patrick Bambrick was buying a house from Grabenschroeder and that witness also found this cancelled check among John Bambrick's papers a year or two afterwards. Grabenschroeder testified that he sold Patrick Bambrick the house and received from him $2,700 in cash, but could not remember anything about the check, although the indorsement upon it looked like the writing of the witness. The witness who found the cancelled check among John Bambrick's papers also stated that when Patrick Bambrick was negotiating for the Grabenschroeder house he stated that he thought he would borrow the money to buy it with from his brother

Bambrick v. Bambrick.

John. Several witnesses called by appellant testified that six or seven years after the dates of these checks they heard the two brothers in a saloon where they were drinking squabble about money matters, and that in these controversies John would assert that Patrick owed him $10,000, to which the latter replied: "If I do," or "if I have any of your money, come down right away and I will pay you, I have got plenty," or words of similar effect. It also appeared in evidence that at this time Patrick Bambrick had a large balance to his credit in bank.

The evidence offered by appellant to support the charge made in his petition, that respondent promised to pay his claim, consisted only of his own testimony. He said that he called to see respondent at her residence two days after her husband's death; that Mr. William H. Swift went out of the house when appellant came in, or was just about to leave when appellant came into the house; that appellant remained about ten minutes, and that in the course of the conversation between appellant and respondent the latter said to appellant: "Do you know what Mr. Swift wanted?" and he answered her, "No, I do not;" and she then said: "He wants me to be administratrix of the estate; have you any objection to my being made administratrix?" He answered, "Not in the least." And she then said, "If you haven't any, there is no one who has any claim on my husband but you, and every dollar he owed you I will pay." He also testified that she asked him not to put in any claim; that she knew as much about it as anybody else and that she would pay it. Appellant testified further that he knew that it took two years to settle an estate in the probate court, and also knew that Mrs. Bambrick took out administration after this interview, but that he did not go to see her again about his claim or present it in any form, or mention it to her until the two years had expired, and he heard rumors that she had made

VOL. 157 mo—28

a final settlement. At one time during this period of two years appellant met her in connection with a controversy which was going on between appellant and Martin L. Bates, over the affairs of the Bambrick-Bates Construction Company. She held stock in that company and sided with Bates; and when appellant asked her why she did this she said she wanted to dispose of her shares in the company and that she was not sure of her money, while appellant was sure of his. In this interview he did not present or assert in any form any claim against her on account of her deceased husband's estate. After he heard the rumors that she had made a final settlement of the estate he went to her and she said she had made a final settlement. He then said to her it was time she was paying him, to which she answered, "You are too late; why didn't you put in your claim?" He then said, "You told me not to do that," and she answered him, "I fooled you once." Immediately after that interview he had his claim made up in the form of the exhibit filed with the petition in this case and had a copy of it served on her, and with the aid of an attorney appellant then presented this claim to the probate court, and next brought this suit.

Appellant gave no testimony tending to show that in the conversation between him and defendant any specific claim was mentioned. Neither did he show that he accepted her proposition, or agreed upon his part to do anything or to omit to do anything. He offered no evidence tending to show, as alleged in his petition, that after the grant of letters of administration to her, and within two years thereafter, she admitted the particular demand set out by him in his exhibit to be correct, or that she admitted that the same was justly due him or that he agreed to and did at her request release the estate from said claim, or that she in consideration thereof undertook or promised and agreed to pay the plaintiff "out of the assets of said estate" (as averred by him) the

amount of said claim.    The conversation with her, which he
testified took place two days after her husband's death, was
the only evidence to sustain the alleged promise.    He never
thereafter at any time before she made final settlement of
the estate took any action upon his part by way of asserting
a demand which if she had paid it could have been made by
her the basis of a novation to indemnify her out of the estate
in which she must share with her three minor children.

The sole and only question for adjudication is the pro-
priety of the court's action in sustaining the demurrer to the
evidence.    That evidence  must be considered in the light
of the pleadings and the pleas of the statute of frauds and of
limitation.

That each of the alleged debts indicated by the first
three items of the account were barred by the five years
statute of limitation as against the estate of Patrick Bam-
brick does not admit of discussion under the evidence of
plaintiff, and as there was not a scintilla of proof to support
the last item, it is obvious that Patrick Bambrick's estate
was not liable for any part of the said claim.    Not only was
it barred by the general statute of limitation (sec. 4273, R. S.
1899; sec. 6775, R. S. 1889), but by the special statute of
two years as well, because said claim was not exhibited to
the administratrix within the two years after the grant of
her letters.    [Secs. 184, 185, R. S. 1899.]

The conversation of plaintiff with defendant before she
was appointed administratrix was in no sense a compliance
with the law, in regard to the presentation of claims for al-
lowance and waiver of service.    Until she qualified she had
no power to bind the estate or waive notice of the claim.

Plaintiff himself testified affirmatively that after that
conversation he never presented his claim for allowance
against the estate until two years had elapsed after the grant
of letters to Mrs. Bambrick. Moreover no pretense is made

that a claim consisting of the present itemized account was exhibited to Mrs. Bambrick at that conversation two days after the death of her husband.

These claims, if ever valid debts, having been barred by the general statutes of limitations, it was out of the power of the administratrix to revive them against the estate of Patrick Bambrick. [Cape Girardeau Co. to use v. Harbison, 58 Mo. 95.]

The plaintiff's own evidence having shown the demands were barred and defendant having pleaded both the general and special statutes of limitation, it it clear that there was no proof of any debts due by Patrick Bambrick to plaintiff at the time of his death.

We are thus brought to the sufficiency of the evidence to establish a binding promise by defendant to pay this claim "out of the assets of said estate that came to her hands." The most careful scrutiny of all the evidence discloses no such promise. The effect of such a promise if made and valid, would have been to bind Patrick Bambrick's estate, and remove the bar of the statute, but as we have already seen she had no authority to make such an agreement, and had she been competent to do so, her promise must have been in writing, but as we have seen plaintiff did not testify to such a promise and as he is the only witness to sustain this averment, nothing more need be said than that the proof utterly fails to sustain the allegation.

The counsel for plaintiff, however, seeks to hold defendant individually liable, as upon an original promise by her to pay the claim out of her own assets. According to plaintiff's testimony her promise unquestionably was either a promise by her to pay the debt of her husband of whose estate she was administratrix out of her own estate, or a promise before she was administratrix to answer for the debt of her husband, and in either case as it was not in writing and as she invokes the statute of frauds, plaintiff's evi-

Bambrick v. Bambrick.

dence was equally insufficient to hold her for said alleged debts. By our statute, "no action shall be brought to charge any executor or administrator, upon any special promise to answer for any debt or damages out of his own estate, or to charge any person upon any special promise to answer for the debt, default or miscarriage of another person, . . . . unless the agreement upon which the action shall be brought, or some memorandum or note thereof, shall be in writing and signed by the party to be charged therewith, or some other·person by him thereto lawfully authorized." [Sec. 5186, R. S. 1889; sec. 3418, R. S. 1899.]    That this was the debt of Patrick Bambrick, for which plaintiff seeks to bind Rose Bambrick, is established by plaintiff's petition. He so alleged and by that petition he is bound in this case.

But that is not all. He testified as follows: "She (meaning Mrs. Rose Bambrick, the defendant herein) said that I was the only one who had any claim of any sort against her husband's estate, and she said for me not to put in any claim, and she would pay me every dollar that was coming to me, that was about all." And again she said, "There is no one who has any claim on my husband but you, and every dollar he owed you I will pay."

It was her husband's debt she was agreeing to pay—not her own. If it ever existed it had already accrued, and was past due. She owed plaintiff nothing. She was speaking of her husband's debt. Her promise was purely collateral. If the statute just recited does not apply to a promise like this then no case for its enforcement can ever be found. It may as well be remarked in this connection, that the only legal construction that could be placed on the words "every dollar he owed you I will pay," even if they had been in writing and signed by. her, would be that she was only promising to pay the just subsisting debts of her husband to plaintiff and not stale claims barred by the statutes.

By his own showing and out of his own mouth he had no

debt which he could enforce against her husband's estate. The promise alleged, was, "after defendant qualified and within the two years." Whereas the promise testified to was "before she was appointed," but in either case it was a special collateral promise which had no validity because not in writing.

But this is not all. It must be borne in mind that plaintiff states in his petition that he presented this claim to defendant as administratrix and she admitted it was valid and the amount justly due him, and thereupon he released and surrendered his claim against the estate. In the only conversation ever had with defendant until after the final settlement, he never exhibited this claim, or any other, to defendant. Even he does not testify that he agreed to her alleged proposal. He nowhere testified that after her appointment he exhibited such a claim until after her final settlement.

He nowhere says that he acceded to her proposition or that he released the estate from his said claim. On the contrary he afterwards exhibited the claim in the probate court, and it was rejected. To hold that the mere casual conversation between the defendant and plaintiff, which he testified took place two days after her husband's death when no claim was exhibited, no amount specified, no item of it made known to her at that time, will bind Mrs. Bambrick to pay this particular claim which if it ever existed had then been barred by the statute for years, would be to give a strained and unnatural construction to the words imputed to her by plaintiff.

To make such a loose general remark the basis of a judgment against her on a specific account against her husband which he never exhibited to her for the whole period of the administration would be a travesty upon justice. There was no substantial evidence offered to sustain the allegations of the petition, and the circuit court properly ruled that there was nothing to submit to the jury, and its judgment is affirmed. *Sherwood* and *Burgess, JJ.*, concur.