## Commonwealth, By, &c. v. Bingham's Admr., et al.

Appeal from Jefferson Circuit Court
(Common Pleas Branch, First Division).

### Bingham's Admr. v. Field, Judge.

Petition for Writ of Prohibition.

(Decided May 7, 1920.)

1. Taxation—Title of Administrator Relates Back to Death of Decedent.—Where decedent died a resident of this state, before the date on which property is assessable for taxation, and her administrator was not appointed and did not qualify until after that date, the title of the administrator must of necessity and for the protection of the estate relate back to the death of decedent, and under the provisions of section 4020 of the statutes it becomes the administrator's duty to list all property owned by decedent at her death for taxation from the time of her death until he loses control of the property.

2.  Executors and Administrators.—Appointment.—The fact that an executor is nominated by the will of the decedent and the administrator by statute makes no difference in the time when the title vests in either, since in either case the action and approval of the probate court is necessary to give legal effect to the appointment.

3.  Taxation—Assessment of Decedent's Property.—Where, the assessor not having assessed decedent's property and his books having been closed before the administrator could make an accurate statement of the nature and extent of the property, the administrator filed with the board of supervisors a list showing all intangible property, as well as a list showing the tangible property of decedent, and the board of supervisors declined to assess the property for taxation because the administrator had refused to confess its taxability, held that the county and circuit court erred in holding that decedent's personal property was not assessable in a proceeding instituted in the name of the commonwealth by a revenue agent under section 4241 of the statutes.

4.  Taxation—Omission of Administrator to List Property.—In such a case the board of supervisors and not the administrator, was responsible for the omission of the property from the assessment roll, and the administrator cannot be penalized under section 4241 of the statutes for failure to list the property.

5.  Taxation—Failure of Administrator to List Decedent's Property. —The administrator cannot be held delinquent for failing to list the intangible property with the county clerk as provided in section 4064 of the statutes, since section 4120 of the statutes expressly empowers the board of supervisors to assess all property omitted by the assessor, and having filed the list with the board in regular session it was not necessary to file another list with the clerk.

B. F. WASHER, J. MATT CHILTON and M. M. LOGAN for appellant.

HELM BRUCE and BRUCE & BULLITT for appellees.

OPINION OF THE COURT BY JUDGE CLARKE—Reversing in the case appealed from the Jefferson circuit court and denying the application for a writ of prohibition filed in this court.

Mary Lily Flagler Bingham died testate July 27, 1917, a resident of Jefferson county, Kentucky, and on September 4, 1917, the Fidelity & Columbia Trust Company, of Louisville, was appointed and qualified in that county as her administrator with the will annexed.

As the law then existed all property was assessable as of September 1st of each year for state and county taxes for the succeeding year and had Mrs. Bingham

lived until, or her administrator been appointed before that day it is clear that all personalty owned by her not located and having a taxable situs elsewhere would have been assessable on that date and liable for state and county taxes for the year 1918. Sections 4020 and 4023 Kentucky Statutes; Commonwealth v. Peebles, 134 Ky. 121, 119 S. W. 774; Commonwealth v. Camden, 142 Ky. 365, 134 S. W. 914; Alexander v. City, &c., 152 Ky. 357, 153 S. W. 455. That this is true is not denied by appellees, but it is insisted that since Mrs. Bingham died before September 1st, 1917, and her will was not probated nor her administrator appointed until after that date, her intangible personal property located outside of the state had no taxable situs within the state on September 1, 1917, and consequently was not assessable on that date nor liable for 1918 taxes.

Whether or not this is true is the first question presented upon this appeal. Section 4020 of the statutes, insofar as applicable, reads:

"All real and personal estate within this state and all personal estate of persons residing in this state, . . . shall be subject to taxation unless the same be exempt from taxation by the Constitution, and shall be assessed at its fair cash value, estimated at the price it would bring at a fair, voluntary sale: Provided, however, that tangible personal property located and having a taxable situs without the state, of persons residing in this state . . . shall not be subject to taxation."

It will thus be seen that all personal property of persons residing in this state is taxable here except tangible personalty located and having a taxable situs elsewhere. Except a comparatively small portion thereof the personal estate of Mrs. Bingham, alleged to be worth more than one hundred million dollars, consisted principally of stocks and bonds issued by non-resident corporations and on deposit in New York banks. Unquestionably all of this personalty had a legal situs in Kentucky on July 27, 1917, and our statutes fixing the legal situs of such property at the residence of the owner are not peculiar to this state but the legal principle involved is, we believe, universally recognized as a sound one. It may be merely a legal fiction, as counsel for appellee calls it, but it is nevertheless a legal necessity without which laws of descent and distribution, comity be-

tween states and nations, and many others as well as taxation, would become a hopeless tangle utterly incapable of just administration. Had Mrs. Bingham upon that date changed her residence to a place to which she could have taken her intangible personalty its situs would have automatically followed her, but property, like an individual, must have, in contemplation of law, some place of abode, and likewise when its situs becomes fixed at one place it must in law remain there until it acquires another situs. Mrs. Bingham, as only she could do, established the situs of this property in this state. She did not take it with her when she died. It is still in existence and must be just as and where she left it unless it has been moved elsewhere. It was to meet exactly this situation that the law stepped in to protect her title and impress upon her property her beneficial interest therein even after death in order that her debts could be paid therewith and any surplus transferred to those upon whom she desired to bestow it if she cared to make a will, or otherwise to her nearest relatives. To accomplish this just purpose the state retains jurisdiction and control of all of her property having a situs here and casts the title directly upon her personal representative. Neither her heirs or her devisees nor her creditors or anyone else take title to or have any right to touch the property or disturb its situs in the interim between her death and the qualification of her personal representative.

Is there then any legal gap whatever between her title and that of her administrator? We think not. Her title must persist after her death until the appointment of her personal representative, or his title after appointment must relate back to her death, because the property persists *statu quo* she left it; and its situs cannot have changed because the property is incapable of changing its own situs and no person had the right or power to do so. This may be but another legal fiction, as counsel insist, but, if so, being necessary to accomplish the just purposes of the law and therefore legal, it is at least preferable to the impossible fiction (which could never be called legal) we are asked to substitute therefor, namely, that during this interim all of this property spontaneously dissolved itself into thin air and disappeared temporarily to some mysterious abiding place beyond the reach of the law but whence later it could

be reclaimed and rehabilitated by the law through an administrator.

We are therefore of the opinion that the provisions of section 4020, *supra,* that "all personal estate of persons residing in this state shall be subjected to taxation, &c.," was not only intended to but literally covers all the personal property owned by Mrs. Bingham at her death, the legal title to which devolved upon her administrator, except such tangible personalty as is in that section excluded; and that upon qualification it becomes the administrator's duty to list same for taxation from the time of her death until, as indicated in Camden v. Commonwealth, *supra,* it loses title and control thereof, since under that case and the many authorities cited therein, including section 4023 of our statutes, it, upon her death, succeeded to her rights and duties with reference thereto.

Nor is this construction of section 4020, when construed in connection with section 4023 of the statutes and sections 170 and 172 of the Constitution, as must be done, contrary, as counsel assume, to the following rule announced in City of Maysville v. Maysville Street Railway Co., 128 Ky. 673:

"It is elementary that taxing laws will not be enlarged by intendment, and no property will be held as embraced within the terms of a taxing statute by mere implication. To impose taxes on property requires a clear and explicit command of the sovereign power; and the courts will never strain a taxing statute in order to make it embrace property which would otherwise not fall within its purview."

It is not by mere implication or any strain upon the taxing statutes that this property is embraced within their purview, because the statutes have clearly fixed the situs of Mrs. Bingham's intangible personalty at the place of her residence not only during her lifetime, but thereafter until her estate is administered and distributed, and by the Constitution as well as the statutes all such property not expressly exempted by the Constitution is uniformly liable for taxes.

Counsel for appellees cite and rely upon Hayden v. Roe's Admr., 66 Wis. 288, 28 N. W. 186, wherein the Supreme Court of Wisconsin expressly declined to apply the doctrine of relation back to an attempt to tax prop-

erty where the owner died prior and the personal representative was appointed subsequent to the taxing day. That case, however, on the facts does not seem to be applicable here because the attempt there was to assess property in the city of Oshkosh where the administrator resided and where the owner had not resided at the time of his death, and probably goes no further than to hold under the local statutes that the taxable situs of intangible personalty is in the county where the decedent resided rather than in the county of the residence of the personal representative, but the reasons assigned by the court for its conclusion would seem to apply equally to the facts here as to the facts in that case, because in the course of the opinion the court holds that the title of the administrator does not relate back from the date of his appointment to the death of his intestate and that as a consequence thereof an assessment against the administrator during the interim was invalid, the court saying:

"It is strongly maintained in support of the validity of the assessment that the title of the administrator to the property relates back to April 29th, the date of the death of his intestate, and hence that the assessment is valid. The premise may be conceded, yet the conclusion does not necessarily follow. The whole doctrine of relation is but a fiction or device of the law, and is hedged with limitations . . . There are numerous cases in the books in which the operation of this legal fiction is limited and restricted. It may be necessary to apply the doctrine of relation in the case of intestate personal property, to enable the administrator to recover for injuries thereto, or for the conversion thereof, occurring before his appointment. He might not be able to do this if the title only vested in him when letters of administration were issued to him. Having the title by relation at the time of the injury or conversion, he may maintain such action. That seems to be as far as it is necessary to extend the doctrine.

"The statute (section 1044) makes personal property assessable to an administrator only when the same is in his charge or possession as such. We do not think the doctrine of relation is sufficiently elastic to authorize us to hold, not only that the administrator was on the first day of May, 1885, the legal owner by relation of the demands against the Oshkosh banks evidenced by their certificates of deposit, but that he was also, on that day,

in charge or possession thereof as such administrator. We find no sanction in the law for such a ruling.''

Despite the high regard we have for the opinions of that court, we are unable to accept its reasoning in this case, because the court therein acknowledges that the doctrine of relation is applicable when it is necessary for the protection of the estate, and that the administrator having title by relation at the time of an injury to or conversion of the property, may maintain an action therefor. That he could claim title by relation for the protection of the estate and deny it in order to escape the necessary legal consequences of title is to us quite anomalous. That he could in one forum claim title in order to collect the income from such property and at the same time in another or the same forum deny title in order to evade the payment of taxes imposed by the sovereign state for the protection of all property rights is to us abhorrent to justice and every recognized rule for its administration.

If there is rightly any limitation upon the doctrine of the relation of an administrator's or executor's title back to the death of his decedent, it must be confined to cases, we think, where the administrator or executor has volunteered in anticipation of his appointment and qualification to do a thing he might or might not have done as his discretion dictated had he been clothed with such fiduciary capacity, but can never extend to an action which under the law he would have been compelled to take in the lawful course of administration had he then been empowered to act. The necessary consequences of title imposed by law he must assume whenever title can be ascribed to him, but the discretionary acts that as a fiduciary he might have performed or not cannot be ratified by or enforced upon him after his appointment unless beneficial to the estate of his decedent. For such a limitation upon the rule we can see some, if not an entirely satisfactory reason. And thus only was it applied in the English cases cited and relied upon by counsel for appellee, viz.: Morgan's Admr. v. Thomas, 8 Welsby, Hurlstone and Gordon, 302, 155 Eng. Rep. Reprints 1362; Murray v. The East India Co., 5 Barn & Ald, 204, 106 Eng. Rep. Reprints 1167. So also in Brown's Admx. v. Lewis, 9 R. I. 497; Bambrick v. Bambrick, 157 Mo. 423, 58 S. W. 8; Wonson v. Sayward, 13 Pick. 402.

Opposed to the reasoning of Hayden v. Roe's Admr., *supra,* if that case is applicable to the facts of this case, are Smith v. Northampton Bank, 4 Cush 1; People, ex rel. Gould v. Parker, &c., Com'rs of Taxes, 150 N. Y. 52, 44 N. E. 785. These two cases counsel for appellees attempt to distinguish upon the ground of a material difference in the method by which executors and administrators derive title, the one from the will of decedent and the other from the probate court, but there is no real difference here, since in either case the action and approval of the probate court is necessary to give legal effect to the fiduciary's appointment. The fact that the one is nominated by the will of the decedent and the other by statute makes no difference whatever in the time when the title vests in either. Of necessity and for the protection of the estate the title of both, with all necessary legal consequences, as distinguished from discretionary burdens the fiduciary might have assumed or not, must relate back to the death of the decedent, although the necessary processes of law for its investure consumes some time.

2. The next question involved is whether or not the personal property, tangible and intangible, of Mrs. Bingham, not having been assessed by the assessor or the board of equalization, was liable to assessment by suit in the name of the Commonwealth upon relation of a revenue agent under section 4241 of Kentucky Statutes. This question is presented both by the appeal from the judgment of the Jefferson circuit court denying the applicability of that statute under the facts in this case, and upon the original petition filed in this court by the administrator against Hon. William H. Field, judge of that court, for a writ of prohibition to prevent him from retaining jurisdiction of the suit, and considering it in effect an appeal from the action of the board of supervisors in declining to assess this property to the quarterly court and thence to the circuit court, as is authorized by section 4128 of the statutes, rather than an original action in the county court under section 4241 Kentucky Statutes.

The assessor did not assess any of this property and his books had been closed before the administrator was able to make a full and accurate statement of the nature and extent of the estate and of the various items of prop-

erty constituting it.   By section 4120 of the statutes it is made the duty of the county board of supervisors to "list all property omitted by the assessor which may be subject to taxation in the county." When this board met, the administrator, having been advised by counsel, and believing that Mrs. Bingham's personal property was not liable to assessment on September 1, 1917, because of her death prior to that time, but desiring to comply with the law if it should turn out that the property was liable went before and filed with the board of supervisors in regular session two complete lists, one showing all the intangible property owned by Mrs. Bingham   at   her death, and which had come into the possession of the administrator since her death, and the other giving the same information as to tangible property.   Accompanying and attached to the statements was the following affidavit of the administrator:

"The undersigned makes this report to the board of supervisors, not because it believes that the properties herein described are subject to taxation in the state of Kentucky, for it believes otherwise, but merely to lay the facts before the board so that in the event it should be held that any properties, or any part of same, are subject to taxation by the state of Kentucky, or the county of Jefferson, neither the Fidelity & Columbia Trust Co., as administrator aforesaid, nor said estate, can be deemed delinquent in failing to report said properties to the tax authorities or be charged with any penalty in failing so to do.

"FIDELITY & COLUMBIA TRUST COMPANY,
Administrator c. t. a. Mary Lily
Bingham, deceased,
By L. W. Botts, Vice President."

The board of supervisors, upon advice of the chairman of the state tax commission, and of the county attorney of Jefferson county, declined to assess the property for taxation, because the administrator would not confess its taxability.   Under section 4128 of the statutes the state, if aggrieved by the action of the board of supervisors, or on account of the failure of the board to act, may appeal to the quarterly court, thence to the circuit court, and finally to this court, the same as in other civil actions.   It is insisted by the appellee that the state's only remedy was by appeal as in this section of the statutes provided, and that having failed to avail itself of

that right within the time prescribed it cannot thereafter proceed under section 4241 through a revenue agent because this latter section applies only to delinquents and it was guilty of no delinquency. Section 4241, insofar as we need quote it, provides:

"It shall be the duty of the sheriff or auditor's agent to cause to be listed for taxation all property omitted or any portion of property omitted by the assessor, board of supervisors, board of valuation and assessment or railroad commission, for any year or years. . . . At the next regular term of the county court after the notice has been served five days if it shall appear to the court that the property is liable for taxation and has not been assessed, the court shall enter an order fixing the value thereof at its fair cash value, estimated as is required by law; if not liable he shall make an order to that effect. . . . All persons owning property which may be assessed as herein provided shall, in addition to the taxes, pay a penalty of twenty per centum on the amount of taxes due and cost of the assessment, except where such property shall have been duly listed by the owner thereof or by any person or corporation or claimant or agent or bailee in possession thereof."

As was said in Louisville & E. Mail Co. v. Barbour, Sheriff, et al., 88 Ky. 73, 9 S. W. 516: "This provision of the statute should be construed liberally and in such a manner as to accomplish the purpose of its enactment." The purpose of the enactment, as is clearly shown from the portions quoted above, was to provide a means for assessing all property liable for taxes that had for any reason failed of assessment by the ordinary assessing authorities no matter whether the omission was the fault of the property owner or the assessing authorities and to provide further for the infliction of a penalty if the omission was the fault of the property owner. The language of the section itself is not susceptible of any other construction and such was indubitably the purpose of the legislature in view of the evils it was attempting to correct. Prior to the enactment of this law there was no provision by which taxable property could be assessed or taxed if, by reason of the cupidity or negligence of the property owner or taxing officials, it was omitted from the assessment roll. It not only would do violence to the language of the statute, but would impugn as well the intelligence and integrity of the legislature to assume

that it desired to provide a means for assessing omitted property only when the omission was the result of the cupidity or negligence of the property owner, and not when the omission resulted from like delinquency upon the part of the assessing officials or those officials whose duty it was to prosecute an appeal from the order of the board of supervisors improperly refusing to assess.

It is equally clear that the legislature intended to penalize the property owner only when he had failed to "list" his property for taxation with a proper assessing authority. This intention is clearly manifested by the provision for the imposition of the penalty and the exception thereto quoted above providing that the penalty shall be paid in addition to the taxes "except where such property shall have been duly listed by the owner thereof or by any person or corporation or claimant or agent or bailee in possession thereof."

Hence in all cases where property liable to taxation has been omitted it is liable to assessment for taxation in a proceeding by the auditor's agent in the manner prescribed by this section whatever other remedies may have been available, but the penalties are not to be added if the property has been duly listed by the owner or anyone rightly in the possession and control thereof for him.

In this case the property had been omitted and should have been assessed, but the administrator of Mrs. Bingham, the owner of the legal title and in possession thereof, had duly listed same with the board of supervisors, and the board—not the administrator—was responsible for the omission.

As pointed out by the court in his written opinion in this case, it is the duty of the property owner to "list" and the duty of the assessor or board of supervisors to "assess" property for taxation. This is not only indicated by the usage usually, though not always, made of the two words "list" and "assess" in the statutes dealing with the subject of revenue and taxation, but any other theory would be repugnant to reason and justice, if not violative of rights secured to the citizens by both the state and federal Constitutions. The court expresses so admirably the objection to the theory of the revenue agent that the property owner must decide for himself and at his peril whether his property is liable to taxation and list only that which is taxable, that we quote the following from his opinion:

"There are many objections to this theory, only two of which need be mentioned.

"(a) It involves a misconception of the statutes. These do not require any such absurd thing as that the owner must swear that his property is taxable. They are intended to aid in bringing to light all taxable property. The owner merely swears and is required to swear only that he is listing all his taxable estate, and not concealing anything.

"(b) The glaring fallacy of the construction given these sections is demonstrated by the procedure in the present case. The administrator submitted all its properties to the discretion of the board, denying their taxability; the board demanded that it admit taxability; the administrator reiterated its denial; the board declined to assess; the revenue agent promptly sued to coerce assessment and to collect the taxes, costs and a penalty. Should the agent be successful for what would the administrator be penalized? Manifestly not for any delinquency—for it listed its properties. Obviously it would be because it had refused to admit taxability and had erroneously decided that question.

"Such a construction of these statutes would make this tyranny: that a man, exhibiting his estate to the authorities, must either admit and swear that it is taxable—in which event it will be assessed—or deny and refuse to swear that it is taxable—in which event the authorities will decline to assess it, and so allow the revenue agent to charge the owner with delinquency to coerce assessment and taxation, if the property is taxable, and to collect a penalty of which he is entitled to three-fourths. Obviously, the construction is wholly beneficial to the revenue agent, wholly oppressive to the owner. In the last analysis, it would:

"a. Deny the owner who doubts the liability of his property that forum which the law provides for the judicial determination of the basic and primary question as to whether his property is subject to taxation.

"b. Require the owner to himself decide the question and to either admit liability, and have his property assessed by the ordinary processes, or to deny liability and in an extraordinary proceeding, be charged with delinquency and, if his property be taxable, be punished for his erroneous judgment.

"c.   Make all owners who deny the  taxability of their property chargeable with delinquency and subject, if their property be taxable, to punishment.

"d.   Throw all disputed questions as to taxability in the hands of the revenue agent, with his penalty.

"In many different respects the construction would violate rights secured to the citizen by both the state and the federal Constitution."

We are therefore clearly of the opinion that the county court and the circuit court as well, erred, in holding that Mrs. Bingham's personal property was not assessable in the proceeding instituted in the county court in the name of the Commonwealth by the revenue agent under section 4241 of the statutes, but since the omission to assess this property was the fault of the board of supervisors in refusing to assess same and not the fault of the administrator who listed same for taxation, the administrator was guilty of no delinquency and no penalties are to be added.  The administrator, however, must pay costs that have been incurred in this action since the filing of its answer.  The question of interest is not passed upon but is left open for adjudication upon return of the case.

It is earnestly insisted for the appellant that the county board of supervisors has no power to assess intangible property and that as to this property the appellee was delinquent since it should have been listed with the county clerk as provided in section 4064 of the statutes.  To this contention we cannot agree since section 4120 expressly confers upon the board the power to assess all property omitted by the assessor, and having filed the list with the board in regular session it was not necessary to file another list with the clerk to be reported by him to the board as under the circumstances of this case would have been his duty to do.  Nor can the fact that by section 4114-1, subsections 12 and 15, volume 3, Kentucky Statutes, the state tax commission is made the final custodian of such lists and given the power to advise and supervise "assessing officers, boards of supervisors and other county officers relative to taxation" by implication deprive the boards of supervisors of express authority to fix the value of such property for taxation.  Under this section the state tax commission takes charge of the lists of intangible property and may present to the board of supervisors any evidence it can pro-

duce to correct any erroneous valuation of same and doubtless under the broad powers given it could prosecute an appeal if the county attorney or sheriff declined to do so from any valuation thus fixed, but the power to assess such property is with the assessor and board of supervisors the same as any other property, although such property must be assessed and valued in one item and the lists thereof kept by the state tax commission rather than the county clerk in order that only proper officials may have access to such information as is contained therein and to which the public is deemed not to be entitled. But the board of supervisors is entitled to this information and can procure it from the state tax commission or any other available source whenever in a proper case it is needed to determine whether or not the property has been correctly valued by the assessor or property owner.

It therefore results that the court erred in dismissing the petition of the revenue agent to assess the personalty left by Mrs. Bingham and in holding it to be in effect an appeal from the action of the board of supervisors in refusing to assess same, but did not err in retaining jurisdiction for the purpose of making the assessment.

Wherefore the judgment in the case of Commonwealth of Kentucky, by, &c. v. Mary Lily Flagler Bingham's Admr., &c., is reversed and the cause remanded for further proceedings consistent herewith and the original application of said administrator for a writ of prohibition against Hon. W. H. Field, judge, is denied.